**John B. and Evelyn HATCHER, Relators,**

v.

**COMMISSIONER OF REVENUE, Respondent.**

No. 47788.

Supreme Court of Minnesota.

April 21, 1978.

John B. Hatcher, pro se, for relators.

Warren Spannaus, Atty. Gen., Paul R. Kempainen, Sp. Asst. Atty. Gen., Dept. of Revenue, St. Paul, for respondent.

Heard before PETERSON, SCOTT and WAHL, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is a review by certiorari, upon the relation of John B. and Evelyn Hatcher, of a decision of the Minnesota Tax Court of Appeals disallowing their claim to rent credits for income tax purposes for the years 1971, 1972, and 1973. We reverse.

Since November 1959 relators have been the joint owners of a home located at 3104 Silver Lake Road, St. Anthony, Minnesota. Since 1968, Evelyn Hatcher has been employed as a faculty member at St. Cloud State University in St. Cloud, Minnesota, and has rented an apartment in St. Cloud. This apartment is furnished with purchased appliances and some furniture from the St. Anthony house. Evelyn Hatcher lived in the St. Cloud apartment during the university's regular sessions for each of the taxable years in issue and during two consecutive 5-week summer sessions in 1973. She lived at the St. Anthony house during the summers of 1971 and 1972, 3 weeks in the summer of 1973, and the Christmas vacation periods of 1971, 1972, and 1973. John Hatcher occasionally travels to St. Cloud to stay with his wife.

John Hatcher has lived continuously at the St. Anthony house with no extended absences since November 1959. Evelyn Hatcher also lived at the St. Anthony house continuously until 1968.

At all relevant times relators were married to each other, were cash-basis, calendar-year taxpayers, and filed a joint Minnesota individual income tax return. On their joint Minnesota income tax returns for each of the taxable years 1971, 1972, and 1973, Evelyn Hatcher claimed a rent credit with respect to the St. Cloud apartment. For each of the same 3 years, John Hatcher filled out a form claiming homestead tax status for the St. Anthony house. This property was classified by the St. Anthony city assessor as 100-percent homestead

property for real estate tax purposes during each of the taxable years in issue and it was assessed accordingly. Only John Hatcher signed the homestead application form for the St. Anthony property.

An audit was conducted by the Minnesota commissioner of revenue of relators' state income tax returns for the taxable years 1971, 1972, and 1973. By order dated August 22, 1975, the commissioner disallowed the claimed rent credit for each of the taxable years in question and determined that an additional income tax liability in the amount of $339.21, including interest, was due.

Relators then appealed to the Tax Court of Appeals. The applicable rent credit statute, since repealed,[1] provided:

"The credit allowed by section 290.981 shall be 10 percent of the total amount paid by the claimant during the taxable year as rent for the occupancy of real property *used as the place of residence of his household* * * *." Minn.St.1976, § 290.983, subd. 1.[2] (Italics supplied.)

The statutory phrase "used as the place of residence of his household" was construed by the Tax Court of Appeals to mean "the general property tax concept of homestead minus the ownership requirement." The Tax Court of Appeals then disallowed the rent credits and held that the "place of residence" of Evelyn Hatcher's household was the St. Anthony home, stating:

" * * * [I]t is evident that Mrs. Hatcher's homestead, for both property tax and rent credit purposes, was located at the [St. Anthony] address during the taxable years in question, and not at the St. Cloud apartment. Therefore, the place of residence of her household also had to be the [St. Anthony] address.

"The most important fact in support of this conclusion is that the home at the [St. Anthony] address received a 100%

---

1. The present version of the rent credit statute is contained in Minn.St. c. 290A. The act is now referred to as the Property Tax Refund Act, L.1977, c. 423, art. II, § 1, which is commonly called the "circuit breaker law."

2. The statute applicable to 1971 and 1972, Minn.St.1971, § 290.983, subd. 1, contained the same language, except only a 7½ percent credit was authorized in lieu of the 10 percent credit applicable to 1973. See, L.1973, c. 650, art. IX, §§ 2 and 4.

homestead exemption on property taxes for each of the years 1971, 1972 and 1973. Mrs. Hatcher was a joint owner of this home with her husband, appellant John B. Hatcher. If her homestead was in fact not located at the [St. Anthony] address, then the homestead exemption should have properly been applied for and granted upon only 50% of the property's value, since that was the extent of Mr. Hatcher's (who would be the only remaining actual homesteader) fractional interest. Op.Atty.Gen. No. 371, November 6, 1935; Op.Atty.Gen. 232–D, June 18, 1943; Op. Atty.Gen. No. 140, December 7, 1956; Op. Atty.Gen. 232–D, June 27, 1961; Op.Atty. Gen. 232–D, June 16, 1965."

The main issue on appeal is whether one may receive the benefits of both the homestead property tax exemption and a rent credit under the statutes in effect during 1971, 1972, and 1973.

The homestead property tax exemption was enacted by the legislature in 1933 and provides direct property tax relief to those persons who "used" their property "for the purposes of a homestead." Minn.St. 273.13, subd. 7. The rent credit provisions, on the other hand, were first enacted by the legislature in 1967 and became effective for rent paid for the year 1968. Ex.Sess.L.1967, c. 32, art. XVII, §§ 1 to 12 (Minn.St.1969, §§ 290.981 to 290.992). To qualify for the rent credits for the years in question, the claimant generally must have been domiciled in Minnesota during the entire calendar year preceding the year in which the claim is filed, rented a unit for residential purposes for at least 6 months during the year covered by the claim,[3] and paid rent "for the occupancy of real property used as the place of residence of his household." Minn.St.1971, §§ 290.982 and 290.983; Minn.St.1976, §§ 290.982 and 290.983. Respondent alleges only that Evelyn Hatcher did not use the St. Cloud apartment "as the place of residence of [her] household" because she received the benefits of the prop-

erty tax homestead exemption. Respondent concedes, however, that Evelyn Hatcher met the other statutory requirements for entitlement to the credit.

It is significant that neither the property tax homestead provisions nor the rent credit provisions expressly excludes a person from enjoying the benefits provided by both statutes. If these provisions were intended to be mutually exclusive, the legislature could simply have so stated in the original act or could have amended the act accordingly. This it did not do. In fact, we observe that both the original act and the current version of the rent credit statute expressly prohibit claimants from receiving both a rent credit and the benefits of certain other provisions of the statutes. See, Minn.St.1976, § 290.991, and Minn.St. 290A.22. Therefore, the legislature did enact specific exclusions in the rent credit statutes and could have done so here if such was the intent.

The general concept behind Minnesota's scheme of rent credits was set forth recently in *Murphy v. Hiniker*, Minn., note 2, 261 N.W.2d 836, 838 note 2 (1978), as follows:

"By allowing a [rent credit] * * *, the legislature considers a certain percentage of a renter's gross rent actually paid to a landlord to be attributable to the property taxes paid on the property rented."

It seems clear that the legislature intended to give certain Minnesota renters a credit for the property taxes paid indirectly through rental payments to a landlord. This purpose would be frustrated if the credits were denied to those, such as Evelyn Hatcher, who are required by job market conditions to leave their spouses to achieve professional employment goals in another place and who by necessity are forced to rent housing apart from their families.

We find it difficult to conceive that the legislature, in considering the present varied life styles, *did not contemplate a situation such as this and intentionally refrain*

---

**3.** For the calendar years 1971 and 1972, Minn. St.1971, § 290.982, required that the claimant reside in a rental unit for "not less than the *last*

six months of the calendar year." (Italics supplied.)

from excluding persons in Evelyn Hatcher's position from receiving the benefits of the rent credit. In fact, it appears that the legislature had no intention of relating the 1933 homestead property tax exemption to this 1967 rent credit provision. It is also difficult to see the logic in attempting to pair these two separate acts as controlling each other, especially when the present "circuit breaker law" allows a homeowner to take an income tax credit comparable to the rent credit and also allows the advantage of the 1933 homestead exemption without relating one to the other. See, Minn.St. c. 290A.

We therefore hold that Evelyn Hatcher is entitled to receive the rent credits claimed for the years 1971, 1972, and 1973, and the decision of the Tax Court of Appeals is reversed. Because we hold that the credits are allowable, there is no reason to consider relators' constitutional arguments.

Reversed.

SHERAN, Chief Justice (dissenting).

I would affirm. In the absence of explicit legislative direction, it does not seem reasonable to me that the same taxpayer should have the benefit of both the homestead exemption and the rent credit.

PETERSON, Justice (dissenting).

I would affirm for the reasons stated by the Tax Court of Appeals.

OTIS, J., took no part in the consideration or decision of this case.